**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3464

_____

FLORIDALMA CLAUDIA GARCIA-GARCIA; B.M.G.,
Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(Nos. A202-133-503 & A202-133-504)
Immigration Judge: Steven A. Morley

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 29, 2020

_____

Before: AMBRO, HARDIMAN and RESTREPO, *Circuit Judges*.

(Filed: September 22, 2020)

_____

OPINION[*]

_____

RESTREPO, *Circuit Judge*.

Floridalma Claudia Garcia-Garcia and her daughter, both natives and citizens

of Guatemala, petition for review of an order of the Board of Immigration Appeals

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

(BIA) dismissing an appeal of their asylum claim. Based on the administrative record before us, we will deny this petition.

## I

Garcia-Garcia, the lead petitioner, and her daughter moved to the United States from Guatemala in October 2014 and have lived here ever since.[1] Born and raised in Guatemala, Garcia-Garcia is part of the indigenous Mam population, descendants of the Mayans. Her primary language is Mam, though she also speaks some Spanish. In 2008, at age sixteen, she had her first of two children with Orlando G. Monterroso Mazariegos in Guatemala; their second child was born in the United States in 2015. Mazariegos is not Mam and primarily speaks Spanish. The couple and their two children live in Westchester, Pennsylvania.

Before moving to the United States, while living in Guatemala, Garcia-Garcia endured harassment, employment discrimination, and mistreatment by Mazariegos's family that she attributes to her status as an indigenous person. Like others in the Mam community, she was denied certain jobs because of her Mam status. Even when indigenous people are able to find work in Guatemala, they are often made to work excessive hours or for less pay.

In addition to societal discrimination, Mazariegos's family caused her significant problems. Three months after she met Mazariegos, the couple moved in with his elderly parents both to care for them and to conserve resources because they could not afford to live on their own. A year into living there, and one month after the

---

[1] We present the facts as set forth before the Immigration Judge (IJ) by Garcia-Garcia, whom the IJ found to be a credible witness.

birth of their first child, Mazariegos moved to the United States while Garcia-Garcia remained in Guatemala to care for his parents. That is when her problems with his family began.

Garcia-Garcia testified before the IJ that Mazariegos's sisters felt she was "invading the space" of their parents. App. 115. His sisters would demand that she leave the house and would "hit [her] and even throw things at [her]" every day. App. 115. She explained that because she was Mam and Mazariegos was not, "his family therefore hated [her]." App. 121. Garcia-Garcia lived with them for approximately six years after Mazariegos moved away, until she joined him in the United States.

Garcia-Garcia testified that if she and her daughter were ordered to return to Guatemala, her entire family would return. Garcia-Garcia would not, however, return to live with her in-laws, relying instead on her six siblings.

Removal proceedings commenced against Garcia-Garcia on January 12, 2015, when the Department of Homeland Security issued a Notice to Appear. Garcia-Garcia conceded removability and requested relief based on asylum, withholding of removal, and protection under the Convention Against Torture (CAT). On February 26, 2018, the IJ denied her requests. She appealed the decision to the BIA but did not challenge the denial of her CAT claim. On October 7, 2019, the BIA dismissed her appeal. Garcia-Garcia now petitions for review of the BIA's dismissal of her asylum claim; she does not challenge the dismissal of her request for withholding of removal.

## II

The BIA had jurisdiction to review Garcia-Garcia's appeal under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction to review a final order of removal under 8 U.S.C.

3

§ 1252(a).  We review the agency's factual findings for substantial evidence and its legal conclusions de novo "including both pure questions of law and applications of law to undisputed facts."  *Blanco v. Att'y Gen.*, 967 F.3d 304, 310 (3d Cir. 2020) (quoting *Herrera-Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020)).

### III

To establish eligibility for asylum, a noncitizen must demonstrate that he or she is a "refugee" under the Immigration and Nationality Act.  8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A).  A "refugee" is a person who is "unable or unwilling" to return to his or her native country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  § 1101(a)(42).  The asylum applicant bears the burden of demonstrating that he or she falls within this definition.  *Abdille v. Ashcroft*, 242 F.3d 477, 482 (3d Cir. 2001).

Persecution encompasses "threats to life, confinement, torture, and economic restrictions so severe that they constitute a real threat to life or freedom."  *Blanco*, 967 F.3d at 311 (quoting *Lukwago v. Ashcroft*, 329 F.3d 157, 168 (3d Cir. 2003)).  However, it "does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional."  *Fatin v. I.N.S.*, 12 F.3d 1233, 1240 (3d Cir. 1993).

Garcia-Garcia seeks asylum based on systemic discrimination against indigenous people in Guatemala and mistreatment by Mazariegos's family—and a fear of returning to some of the same conditions.  Starting with her argument that she

suffered past persecution, we consider the "cumulative effect" of the circumstances she has set forth. *See Blanco*, 967 F.3d at 311.

She has not demonstrated that the employment issues and societal discrimination she experienced caused her to experience "severe economic disadvantage" that threatened her life or freedom—or that these difficulties were deliberately imposed on her. *Li v. Att'y Gen.*, 400 F.3d 157, 168 (3d Cir. 2005). Nor has she demonstrated that the abuse by her husband's family ever rose to the level of persecution. *See Blanco*, 967 F.3d at 311. Garcia-Garcia thus has not established that she suffered past persecution.

There is therefore no presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(1). To establish a well-founded fear of future persecution, a noncitizen must demonstrate both a subjective fear of persecution and an objectively "reasonable possibility of suffering such persecution if he or she were to return to that country." 8 C.F.R. § 208.13(b)(2)(i); *Abdille*, 242 F.3d at 495–96.

The administrative record does not provide evidence of an objectively reasonable possibility of future persecution. Garcia-Garcia's evidence of discrimination against indigenous people in Guatemala falls short of establishing a "pattern or practice of persecution" against a group to which Garcia-Garcia belongs. *See Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 687 & n.8 (3d Cir. 2015) ("To qualify as a 'pattern or practice' . . . , the persecution must be 'systematic, pervasive, or organized.'"). Additionally, regarding her mistreatment by Mazariegos's family, Garcia-Garcia testified that if she were removed to Guatemala, she would most likely return with Mazariegos and both of her children, and they would not live with his

family.  Garcia-Garcia's siblings in Guatemala would likely help her and her family as they reestablish their lives there.  Given the above considerations, Garcia-Garcia's allegations do not rise to the level of "persecution or a well-founded fear of persecution."  § 1101(a)(42).  Thus, we will deny Garcia-Garcia's petition for review.